```
            UNITED STATES DISTRICT COURT
               DISTRICT OF MINNESOTA
              Civil No. 06-2266(DSD/JJG)
```

UltiMed, Inc.,

        Plaintiff,

v.     **ORDER**

Becton, Dickinson and Company,

        Defendant.


This matter is before the court upon plaintiff's appeal[1] from Magistrate Judge Jeanne J. Graham's September 5, 2008, order denying in part its motion to compel discovery.

## BACKGROUND

Plaintiff UltiMed, Inc. ("UltiMed") manufactures and distributes hypodermic needles and syringes for diabetic home use. Defendant Becton, Dickinson & Co. ("Becton") is a medical technology company that manufactures and sells medical supplies throughout the world. In a June 6, 2006, complaint, UltiMed alleged that Becton unreasonably restrained trade and willfully acquired and maintained monopoly power in the home use insulin syringe market through anti-competitive conduct in violation of sections 1 and 2 of the Sherman Act. UltiMed also alleged that

---

[1] The court construes UltiMed's "Memorandum of Law in Support of its Objection to the Denial in Part of its Motion to Compel Discovery" [Doc. No. 179] as an appeal of the magistrate judge's September 5, 2005, order.

Becton entered into rebate contracts with third parties that substantially lessened competition in that market in violation of section 15 of the Clayton Act and Minnesota law.

On July 29, 2008, UltiMed deposed Becton's Director of Managed Markets, Karl S. Schumann ("Schumann"). Prior to his employment at UltiMed, Schumann worked for Advanced Paradigm (now CaremarkPCS) and Medco, negotiating rebate contracts with pharmaceutical companies. On September 26, 2003, Schumann filed a False Claims Act ("FCA") qui tam action against Medco in the United States District Court for the Eastern District of Pennsylvania. (Def. Ex. A-6 at 2.) On April 25, 2005, Schumann brought a second FCA qui tam action against CaremarkPCS in the same district. (Def. Ex. A-4.) The entire Medco docket and portions of the CaremarkPCS docket remain under seal.

During Schumann's July 29, 2008, deposition, UltiMed's counsel questioned him about the qui tam actions. Schumann acknowledged filing the actions against his former employers and discussed the monetary awards he received. However, upon further questioning, the following exchange took place between UltiMed's counsel, Schumann and Becton's counsel:

> UltiMed: What was your involvement in the contracting matters that you alleged to have been wrongful?
>
> Becton: Objection. This is a subject that pertains to other companies, not his employment at Becton and there are issues that pertain to the rights of these other entities

2

that are not represented here today. And so I am going to instruct the witness not to answer.

UltiMed:  Are you going to accept that instruction?

Schumann:  Yes....

UltiMed:  [S]o with respect to the Medco case, I want to make sure that we have a clear record, what conduct were you complaining about in that case?

Becton:  Objection.  You asked the very same question and I instruct him not to answer on the grounds that I already articulated.

UltiMed:  The same question with respect to ... Caremark, what conduct were you complaining about?

Becton:  Same instruction, same objection.

UltiMed:  With respect to the Medco case, did the conduct that you were complaining about occur while you were at Medco?

Becton:  Same objection and instruction.

UltiMed:  How did you know about the conduct that you were complaining about?

Becton:  Same objection, same instruction.

UltiMed:  And as to Caremark did the conduct that you were complaining about occur while you were with the entity that Caremark later acquired?

Becton:  Same objection, same instruction.

UltiMed:  ow did you know about the conduct of the Caremark entity?

Becton:  In addition to being asked and answered or unanswered, same objection, same instruction.

3

>UltiMed: Now, you have heard a number of instructions in the last two minutes from your counsel, are you relying on those instructions and declining to answer the questions?
>
>Schumann: Yes, I am.

(Def. Ex. A-15 at 29-30, 272-274.)

Becton provided UltiMed a statement of the legal and factual basis for its objections on August 19, 2008. According to Becton, the questions involved privileged communications with other counsel, were unrelated to Schumann's work at Becton and potentially implicated confidentiality and other legal obligations Schumann owed his former employers. (Def. Ex. A-19.)

On August 21, 2008, Becton moved for a protective order prohibiting further discovery from Schumann. The next day, UltiMed filed a motion to compel Schumann's testimony relating to his involvement in the qui tam actions. On September 5, 2008, the magistrate judge denied UltiMed's motion from the bench because the information and questions were "too attenuated" and "lack[ed] any probative value." (Sept. 23, 2008, Hr'g Tr. at 60:6-21.) As a result, Becton withdrew its motion for a protective order and UltiMed appealed the magistrate judge's decision.

## DISCUSSION

A district court will reverse a magistrate judge's order on a nondispositive discovery matter only if it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); D. Minn. L.R. 72.2(a).

Any nonprivileged matter that is relevant to any party's claim or defense is discoverable. Fed. R. Civ. P. 26(b)(1). This includes any material that bears upon, or that reasonably could lead to other matter that could bear upon, any issue that is or may be in the case. <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 (1978). The material need not be admissible as evidence but must be reasonably calculated to lead to admissible materials. Fed. R. Civ. P. 26(b)(1). In a deposition, counsel may only instruct the deponent not to answer in three circumstances: (1) to preserve a privilege; (2) to enforce a limitation ordered by the court; or (3) to present a motion under Rule 30(d)(3). <u>Id.</u> at 30(c)(2).

Schumann's testimony with respect to the qui tam actions satisfies the discovery rule's liberal relevancy standard. Specifically, UltiMed alleges that Schumann negotiated contracts similar to those at issue in this case while he was employed at CaremarkPCS and Medco. Discovery of such information is relevant to determine Schumann's credibility as a material witness and his knowledge of the types of rebate contracts that UltiMed challenges in this case. Therefore, Becton's counsel's instructions not to answer were only appropriate in the three circumstances set forth in Rule 30(c)(2).

**A.   Privilege**

An instruction not to answer is permissible under Federal Rule of Civil Procedure 30(c)(2) when necessary to preserve a privilege. See Armstrong v. Hussmann Co., 163 F.R.D. 299, 302 (E.D. Mo. 1995) (instruction not to answer inappropriate when question did not threaten disclosure of privileged evidence); Dravo Corp. v. Liberty Mutual Ins. Co., 164 F.R.D. 70, 75 (D. Neb. 1995) (same). Becton argues that instructing Schumann not to answer was necessary to protect "multiple privileges," including attorney-client, joint prosecution and work-product protections.

Confidential communications between an attorney and client are absolutely privileged from disclosure against the will of the client. Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 601 (8th Cir. 1977). Similar to the attorney-client privilege, a "joint-defense" or "common-interest" privilege protects confidential communications made by the client or his lawyer to a lawyer representing another in a matter of common interest. See Morrell v. Local Union 304A, 913 F.2d 544, 555-56 (8th Cir. 1990). In addition, the attorney work product doctrine protects from discovery materials obtained or prepared in anticipation of litigation, as well as an attorney's mental impressions. Hickman v. Taylor, 329 U.S. 495, 511 (1947). These privileges, however, do not prevent disclosure of factual information. Upjohn Co. v. United States, 449 U.S. 383, 396 (1981); Hickman, 329 U.S. at 512.

When it is clear that a deponent is not being asked to reveal communications between client and lawyer or attorney work product, but rather to discuss facts, the claim of privilege is improper. The party asserting the privilege bears the burden of establishing its applicability. Bouschor v. United States, 316 F.2d 451, 456 (8th Cir. 1963).

In this case, UltiMed's questions did not seek discovery of privileged communications or attorney work product.  Rather, UltiMed sought general facts related to Schumann's conduct in the qui tam actions.  The court recognizes that certain questions related to the qui tam actions may improperly seek privileged information.  Becton's blanket assertion of privilege, however, does not allow the court to assess the applicability of the privilege on a question-by-question basis. See In Re Milk Prod. Antitrust Litig., 84 F. Supp. 2d 1016, 1028 (D. Minn. 1997) (party asserting attorney-client privilege must provide factual support). Accordingly, the court determines that Becton's assertion of privilege is overly broad and the facts underlying the qui tam actions are not privileged.

**B.   Court-Ordered Limitations**

Becton also argues that its instruction not to answer was necessary to enforce orders sealing certain portions of the Medco and CaremarkPCS cases.   An instruction not to answer is permissible to enforce "a court directive limiting the scope or

length of permissible discovery." Fed. R. Civ. P. 30(c)(2) advisory committee's note. However, only limitations ordered in the underlying case are applicable. Cf. In Re Application Pursuant to 28 U.S.C. § 1782, 249 F.R.D. 96, 104 (S.D.N.Y. 2008); Frazier v. Se. Pa. Transp. Authority, 161 F.R.D. 309, 316 (E.D. Pa. 1995). Therefore, orders sealing the Medco and CaremarkPCS cases do not authorize Schumann's refusal to answer questions related to those cases.

**C.   Protective Order**

Finally, a deponent may refuse to answer a question in order to present a motion under Rule 30(d)(3). Fed. R. Civ. P. 30(c)(2). Rule 30(d)(3) provides that, at any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. Id. at 30(d)(3)(A). The court may then order that the deposition be terminated or may limit its scope and manner as provided in Rule 26(c). Id. at 30(d)(3)(B).

On August 21, 2008, Becton moved for a protective order to prevent further discovery on Schumann's involvement in the qui tam actions. That motion, however, was withdrawn after the magistrate judge denied UltiMed's motion to compel. Therefore, the court remands this matter to the magistrate judge to permit Becton to renew its motion for a protective order addressing the sealed

nature of the qui tam actions and any confidentiality agreements between Schumann and his former employers.  Upon ruling on the protective order, the magistrate judge shall reconsider UltiMed's motion to compel Schumann's testimony.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that UltiMed's appeal of the magistrate judge's order is granted and this matter is remanded to the magistrate judge for further action consistent with this order.

Dated:  November 6, 2008

s/David S. Doty
David S. Doty, Judge
United States District Court
